HARRIET STRONG *v.* PELEG A. EDDY, *Appellant.*

*Contract.    Construction.    Standing Timber.*

In a contract of sale of standing timber to be cut and drawn off the operative words were as follows : " Said timber land is situated on the easterly part of Mrs. Strong's Bald Mountain lot, so called, and said Davis is to cut and draw the same in and by the 31st of May, 1861, and to cut and pile the brush in a reasonable and prudent manner, said Davis to have a right of way through Mrs. Strong's said land on Bald Mountain for this purpose and to prepare and make a road thereon." *Held,* that under this contract Davis was to draw the wood and timber entirely off Mrs. Strong's land, within the time specified, and the contract was not complied with by drawing the logs to the plaintiff's pasture

adjoining the timber land, and such as were drawn and left there till after the time specified for cutting and drawing off the timber became the property of Mrs. Strong.

THIS was an action of trover for a quantity of lumber, and was originally commenced before a justice of the peace, and it came to the county court on the appeal of the defendant. Plea, the general issue, and trial by the court at the March Term, 1866, KELLOGG, J., presiding, by the consent of the parties.

The only question in the case arose upon the construction of the following contract:

" This agreement, made this 31st day of May, 1858, between Mrs. Harriet Strong, of the one part, and Albert F. Davis, of the other, witnesseth, that the said Harriet sells to the said Albert, the timber and wood on eighteen acres of land, as shown to the said Davis by Edgar L. Ormsbee and Samuel Hayward, to be taken in a compact form, but not to be confined to a square piece, or a parallelogram ; also, one acre in another place as pointed out by the said Edgar and Samuel, for which the said Davis is to pay Mrs. Harriet Strong the sum of three hundred dollars, one hundred and fifty dollars on demand, and the balance in two equal annual payments from this date.    Said timber land is situated on the easterly part of Mrs. Strong's bald mountain lot, so called, and said Davis is to cut and draw the same in and by the 31st of May, 1861, and to cut and pile the brush in a reasonable and prudent manner ; said Davis to have the right of way through Mrs. Strong's said land on bald mountain for this purpose, and to prepare and make a road thereon.
                                        " (Signed,)    HARRIET STRONG.
" In presence of EDGAR L. ORMSBEE."

All the rights of Davis under the contract were sold and transferred by Davis to the defendant on the 14th day of June, 1860.    After the making of the contract, Davis and the defendant cut a large number of logs on the land referred to, and described in the contract ; and, in the winter of 1860 and 1861, the defendant went on to the said land, and drew therefrom about two hundred of these logs to the saw-mill to be sawed, and also drew " some over one hundred " of the logs, which were left on the said land off from the said land down into a pasture on the plaintiff's bald mountain lot, and there piled the same up on skids, and left them, intending to draw them to the saw-mill at some then future time.    This was in the last days of March, 1861, and there was then left remaining on the land referred

to, and described in the contract, between two and three hundred logs, which had been cut by Davis and the defendant under the contract. The defendant testified, among other things, as follows, viz: " The next winter after I purchased of Davis, I went on to the lot, and drew two hundred logs, or over that, to the mill, and I drew some over one hundred logs down into the pasture. The sleighing failed me, and I thought that I would get them off from the lot, as the contract was about running out. I piled them in the pasture, as I thought that I would get them as far from the lot as I could,—as far as the snow would admit of." The defendant subsequently procured an extension of the time limited in said contract, for cutting and drawing the timber and wood so sold by the contract as aforesaid, to the 1st day of April, 1863. The defendant never had any license or permission from the plaintiff or her agents, to pile the said logs in her said pasture, which were so piled there on skids, or to have the same remain there for any length of time whatever. About the 1st day of January, 1865, the plaintiff procured the logs which were so piled in her pasture, or such of them as were fit for sawing, to be drawn from the place where they were so piled, to the saw-mill of one Myron E. Marshall, in Clarendon, and to be there sawed into boards, and paid Marshall for sawing the same. The said logs were hemlock logs, and about the 1st of April, 1865, after the same were sawed into boards, the defendant went to the said saw-mill, and took and carried away 1548 feet of the boards, sawed from said logs, claiming that the logs were his property, and converted the same to his own use. The value, at the mill-yard of the said saw-mill, of the boards so taken, carried away, and converted by the defendant, with interest thereon from the time of the conversion to the time of trial, amounts to the sum of sixteen dollars and twenty-eight cents.

On these facts the court, *pro forma*, decided that the defendant was guilty in manner and form, as the plaintiff in her declaration had alleged, and that the plaintiff was entitled to recover of the defendant the said sum of sixteen dollars and twenty-eight cents as damages, and rendered judgment accordingly,—to this decision and judgment the defendant excepted.

*E. & H. Edgerton*, for the defendant.

·*Prout & Dunton*, for the plaintiff.

The opinion of the court was delivered by

PECK, J.  The only question is whether the boards which the defend-
ant took and carried away from Marshall's mill in April, 1865, were
the property of the plaintiff or the property of the defendant.   The
property was in one or the other.   If the plaintiff owned the logs
from which the  boards  were sawed, at the time she caused them  to
be drawn to the mill about the 1st of January, 1865, from her pas-
ture on her bald mountain lot, where the defendant had drawn and
piled them in the winter of 1860-1, then she owned the boards; oth-
erwise the boards were the property of the defendant.   The logs
were cut by the defendant on the plaintiff's bald mountain lot, and
were the plaintiff's property at the time in question, unless the
defendant owned them by virtue of the contract between the plaintiff
and Albert F. Davis, and Davis' assignment of the contract to the
defendant.   The defendant by that assignment stands in the place of
Davis, invested with all his rights under the contract.   On the 31st
May, 1858, the plaintiff executed a written contract to Davis by
which she sold to him the timber and wood on eighteen acres of land
and on one other acre on the same lot, specified in the contract.   The
operative words of the contract on which the disputed question of
construction depends, are as follows, "said timber land is situated
on the easterly part of Mrs. Strong's bald mountain lot, so called,
and said Davis is to cut and draw the same in and by the 31st of
May, 1861, and to cut and pile the brush in a reasonable and pru-
dent manner, and said Davis to have a right of way through Mrs.
Strong's said land on bald mountain for this purpose and to prepare
and make a road thereon."   It is not denied by the defendant's
counsel but that the right and title of Davis to the wood and timber
was conditional, dependant upon his cutting and drawing the same
within the time limited for the purpose in the contract. · But it is
claimed that this provision of the contract is satisfied by cutting the
timber and drawing it within the time specified, from the eighteen

acre piece and the one acre piece on which it was cut, without drawing it off the plaintiff's land or entirely off from the bald mountain lot; and therefore by drawing the timber and piling it in the pasture of the plaintiff on her bald mountain lot within the specified time, the property in the logs vested absolutely in the defendant. The plaintiff claims that the construction of the contract is, that Davis should draw the wood and timber off entirely from the bald mountain lot, or off the plaintiff's land, within the time specified. The presumption is, that drawing it off the bald mountain lot would have removed it entirely from the plaintiff's land, as nothing appears to the contrary. It does not appear that the plaintiff owned any other land contiguous to that lot or elsewhere. It appears that the time was subsequently extended by agreement to April 1st, 1863, but that does not affect this question of construction. It is insisted by the plaintiff's counsel that in the expression, " to cut and draw the same in and by the 31st of May, 1861," the word " *in* " means into the mill, which would be off the lot. If the expression had been, to draw the lumber in by the 31st of May, it would have tended to favor the plaintiff's construction. But the words " in and by the 31st of May," can hardly be taken to refer to the place to which the lumber should be drawn ; especially as the plaintiff had no interest in that matter. We think these words refer to time only, although the word " *in* " might more properly have been left out. So if the plaintiff's construction of these words was intended, the word " *and*," immediately succeeding the word " *in* " should not have been inserted. But the question still remains whether from the whole language of the contract, the construction is that Davis was merely to draw the wood and timber from the particular locality on which it was cut, or remove it entirely from the bald mountain lot. We think, construing the words in reference to the object in view in limiting the time, that the latter construction is the true interpretation of the contract. Only one time is limited, and it is applicable to the cutting and the drawing. The manifest object and intent was to fix a time when all the rights of Davis to enter upon the plaintiff's land under the contract should cease. It cannot be supposed the plaintiff intended to give Davis a right for an indefinite and

unlimited time, or until the timber cut within the time limited, should entirely decay, to go on to her lot and construct a road and draw off the wood and timber, and in the mean time have it lay there encumbering her land. It is true, as urged by the defendant's counsel, that the provision that Davis should cut and pile the brush, indicates that the plaintiff intended to clear the particular piece of land on which the timber was cut, but it cannot from that be inferred that she intended to give Davis the right to encumber and enter upon other parts of the lot after the time specified had expired. The language of the grant of a right of way to draw off the wood and timber harmonizes with, if it does not aid, this construction. "To have a right of way through Mrs. Strong's said land on bald mountain, *for this purpose*," and to construct a road, means for the purpose of drawing off the wood and timber within the time limited, not for an indefinite period.

The judgment of the county court is affirmed.