FRANK DeGOOSH *v.* BALDWIN & RUSS.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 8, 1912

*Deed of Standing Timber—Limited Time for Removal—Construction—Covenant or Condition — Habendum — Property Conveyed—Trespass—Action—Damages.*

The intention of the parties to a deed must be ascertained from the whole instrument construed so as to give meaning and effect to every part of it.

Neither the habendum in a conveyance nor the covenant following can en-
    large the estate granted in the premises, but both the habendum and
    the covenant may be considered in aid of the construction of the prem-
    ises.

Where it is doubtful whether a clause in a deed is a condition or a covenant
    it will be construed as a covenant.

The premises of a deed recited that the grantors remised, released, and for-
    ever quitclaimed unto the grantee "all their right and title" to a "lot
    of standing timber" described by metes and bounds, "it being all the
    standing timber bounded," "meaning to convey all the standing timber
    upon the above described premises and the said" grantee "shall have
    three years from April 1, 1905, for the purpose of removing said timber,"
    the grantee to have and to hold all the grantors' "right and title in and
    to said quitclaimed standing timber with the appurtenances thereof" to
    the grantee, his heirs and assigns forever. *Held*, that the deed was an
    absolute conveyance of the standing timber, and the time-limit clause
    a mere covenant giving the right of entry on the land during the desig-
    nated period for the purpose named, and so, though the timber was not
    removed within the three years, it still belonged to the grantee.

The ownership of standing timber, with the right to enter for its removal,
    may be conveyed by quitclaim deed.

Where the title to standing timber was conveyed to defendants to be removed
    within a designated time, they had no right, after the expiration of that
    time, to enter to remove the timber, and, having done so, were tres-
    passers, but not liable for the value of the timber so removed.

TRESPASS *quare clausum.* Pleas, the general issue and
*liberum tenementum.* Plaintiff new assigned, and defendants
rejoined with a general denial and notice thereunder. Trial
by jury at the December Term, 1910, Orange County, *Hall*, J.,
presiding. Verdict and judgment for the plaintiff. The de-
fendants excepted.

In this action the defendants are charged in trespass with
breaking and entering the plaintiff's close, and then and there
taking and carrying away, of the property of the plaintiff, two
hundred thousand feet of wood and lumber and fifty cords of
hemlock bark and converting the same to their own use. De-
fendants' notice under their rejoinder was that on the
trial of said cause they would offer evidence tending to prove that
the property in and the title to the trees on said close described
in the plaintiff's declaration, at the time the said several supposed

trespasses were committed, were in the defendants; also that the plaintiff did not at the time this suit was brought, nor at any time since, have any property rights or ownership in the trees standing and growing on, or which had been cut from, said close and were thereon lying and being; also that the defendants went upon said close by leave and license of one E. H. Saxby from whom defendants got title to said trees and timber, and from whom the plaintiff got title to the land, or so much thereof as defendants did not own by prior deed.

It appeared in evidence that whatever right, title, or interest the plaintiff had in or to the trees standing or the lumber and bark cut and lying, on the close, came from E. H. Saxby. It also appeared that whatever title the defendants had to the standing trees and this same lumber and bark, came to them from the same grantor, Saxby; that Saxby, by quitclaim deed duly executed and recorded, conveyed to one J. B. Bean the timber on the close described, and that the same timber before it was in fact severed from the land, was in like manner conveyed by Bean to the defendants. Sylvanus H. Martin and Perley H. Martin joined as grantors in the deed from Saxby to Bean, but what their interest was in the land or timber described, the bill of exceptions does not show. This deed, above the conclusion, was as follows:

"Know all men by these presents, that we, Sylvanus H. Martin and Edward D. Saxby and Perley H. Martin, of Vershire and West Fairlee in the county of Orange, and State of Vermont, in consideration of two hundred seventy-five dollars paid to our full satisfaction by J. B. Bean of West Fairlee, in the County of Orange, and State of Vermont, have remised, released, and forever quitclaimed unto the said J. B. Bean, all right and title which we, the said Martins, and E. H. Saxby, or our heirs have in and to a certain lot of standing timber in West Fairlee, in the County of Orange, and State of Vermont, described as follows, viz:

"It being all the standing spruce, fir, hemlock, bass, ash and hard wood timber upon the Sylvanus H. Martin farm, so-called, described as follows:

It being all the standing timber bounded north by a line of spotted trees, west by C. J. Slack, south by George Baldwin and

east by a wire fence, the pasture fence between the said lot and the home pasture.

Meaning to convey all the standing timber upon said above described premises and said J. B. Bean shall have three years from April 1, 1905, for the purpose of cutting and removing said timber.

To have and to hold all our right and title in and to said quitclaimed standing timber with the appurtenances thereof, to the said J. B. Bean, his heirs and assigns forever.

And furthermore, we the said Sylvanus H. Martin and P. H. Martin and E. H. Saxby do, for ourselves, our heirs, executors and administrators, covenant with the said J. B. Bean his heirs and assigns, that from and after the ensealing of these presents, we the said Sylvanus H. Martin and E. H. Saxby and Perley H. Martin, will have and claim no right in or to the said quitclaimed standing timber.

In witness whereof," etc.

On June 13, 1907, Bean, by quitclaim deed, conveyed all his right and title in and to the said standing timber with the appurtenances thereof to the defendants. This deed contained the same time-limit clause as did the deed to Bean, with the words "and and not after" inserted immediately after the date "April 1, 1905;" it also contained in substance the same habendum, followed by the same covenant.

On October 22, 1908, Saxby and his wife quitclaimed all their right, title, and interest in the land, and also all their "right, title and interest in and to the timber cut from said piece of land by J. B. Bean, or his assigns, or the agents thereof, which was not removed from said land before the 2nd day of April, 1908, and all bark peeled from said timber." The plaintiff's evidence tended to show that he took possession of the premises, and the wood, lumber, and bark theron, under said deed shortly after its date. At the time of the plaintiff's purchase there was lumber and bark lying and being on the land, which was subsequently removed by the defendants. It appeared that all this lumber had been cut by the defendants prior to April 1, 1908, except about 3,000 feet, and that it was all cut and the bark peeled and piled sometime before the plaintiff got title by virtue of his deed from the Saxbys. The plaintiff purchased the farm

with full knowledge that defendants claimed they had paid for .and owned all the timber, lumber, wood and bark on that part of the farm described in the deed from Saxby to Bean. The plaintiff's evidence tended to show that after his said purchase .she notified the defendant not to remove the lumber and bark lying and being on said lot; and he claimed to recover the full value of all such lumber and bark there when he took his deed October 22, 1908, which was subsequently removed by the defendants.

*R. M. Harvey* and *David S. Conant* for the defendants.

The lumber and bark lying on the ground at the time of the entry by defendants were not proper elements of damage. *Smith* v. *Furbish,* 68 N. H. 123; *Walcut* v. *Tiersch,* 82 Ohio St. 263, 29 L. R. A. (N. S.) 554; *Yale* v. *Seeley,* 15 Vt. 221; *French* v. *Freeman,* 93 Vt. 93; *Fullington* v. *Goodwin,* 57 Vt. 641; *Hoyt* v. *Stratton Mills,* 54 N. H. 109, s. c. 54 N. H. 432; *Irons* v. *Webb,* 41 N. J. L. 203.

The defendant had the right to enter upon this land and .remove the lumber and bark without being liable for damages in this action, and in any event liable only for the actual damage to the land, which in this case could be no more than nominal damages; in other words that the defendants did not forfeit their right to this lumber and bark by not removing the same within the time limit. *Macomber* v. *Detroit Lansing, etc. Co.,* 108 Mich. 41, 32 L. R. A. 103; *Magnetic Ore Co.* v. *Marbury Lumber Co.,* 104 Ala. 465, 24 L. R. A. 434; *Pierpont* v. *Barnard,* 6 N. Y. 290; *Rice* v. *Boston etc.,* 12 Allen 141; *Guild* v. *Richards,* 16 Gray 309; *Hooper* v. *Cummings,* 45 Me. 359; *Van Ransselier* v. *Ball,* 19 N. Y. 100; *Nicholl* v. *N. Y. etc., Co.,* 12 N. Y, 121; *Golden* v. *Glock,* 57 Wis. 118, 46 Am. Rep. 32; *Hicks* v. *Smith,* 77 Wis. 146; *Williams* v. *Flood,* 63 Mich. 494; *Halstead* v. *Jessup,* 150 Ind. 85; *Erskine* v. *Savage,* 96 Me. 57; *Alexander* v. *Bauer,* :94 Minn. 174; *Kimmerman* v. *Daffin,* 149 Ala. 380.

*Frank S. Williams* and *Arthur W. DeGoosh* for the plaintiff.

This was a conveyance of only so much timber as the grantee

should remove within the time limited. Reed v. *Merrifield,.* 10 Met. 155; *Chester Emery Co.* v. *Lucas,* 112 Mass. 424; *Hunt* v. *Boston,* 183 Mass. 303; *Dennis Simmons Lumber Co.* v. *Corry,* 140 N. C. 462; *Brown* v. *Bishop,* 105 Me. 272; *Strong* v. *Eddy,* 40 Vt. 547; *Judevine* v. *Goodrich,* 35 Vt. 19; *Straw* v. *Straw,* 70 Vt. 242; *United Society* v. *Brooks,* 145 Mass. 410;. *Boisaubin* v. *Reed,* 2 Keyes 322; *Kellum* v. *McKinstry,* 69 N. Y. 269; *Lacustrine Fertilizer Co.* v. *Lake Guano .Fertilizer Co.,* 82· N. Y. 476; *McIntier* v. *Barnard,* 1 Sandf. Ch. (N. Y.) 52.

WATSON, J.    Although the gist of the action is the breaking, and entering the plaintiff's close, the real bone of contention. is the title to the lumber and bark lying and being thereon at the time the plaintiff became the owner of the land, October 22, 1908.    In addition to the land, the plaintiff then acquired all the right, title and interest in and to such lumber and bark as the Saxbys had.    Before any of the standing timber was cut the defendants took a conveyance from Bean of all his right and title therein with the appurtenances thereof.    The ownership of the lumber and bark in question at the time named is therefore dependent upon the construction of the deed to Bean.. The plaintiff contends that the time-limit clause therein made the grantees title conditional on the timber being cut and removed from the land within the time specified, and that the title to so much thereof as was not thus cut and removed remained in the grantor, or reverted to him at the expiration of that period.    The defendants contend that the sale was absolute, and that the so-called time-limit clause is a mere covenant naming a time within which entry upon the land might be made for the purpose of cutting and removing the timber..

The question is, What was the intention of the grantors? And this must be ascertained from the whole instrument, with. a view to giving every part of it meaning and effect.    *Collins* v. *Lavelle,* 44 Vt. 230.    The habendum cannot enlarge the: grant, yet it may be considered in aid of its construction.    *Deavitt* v. *Washington County,* 75 Vt. 156, 53' Atl. 563.    The same may be said of the covenant following the habendum, it cannot be understood as enlarging the estate granted in the premises. of the deed, yet it being a question of construction as to what·

was granted, resort may be had to the covenant to help out the construction, and this, upon the principle that it must be in view of the whole instrument, and to give each part some operative effect. *Mills* v. *Catlin*, 22 Vt. 98. "It is an important rule of construction, applicable to all written instruments," says the Court in *Robinson* v. *The Missisquoi R. R. Co.*, 59 Vt. 426, 10 Atl. 522, "that every word and every · clause shall, so far as possible, be given some force and meaning, and that in case, construing the whole instrument one way, meaning is given to every word and clause, while construing it another way some portion of the language used is rendered meaningless, the construction which gives force and meaning to all the language used, is, as a rule, to prevail."

The deed shows that the grantors "forever quitclaim" to Bean "all their right and title" to the "lot of standing timber," described. "It being all the standing spruce, fir, hemlock, bass, ash and hard wood timber" on the Martin farm, described as follows: "It being all the standing timber bounded,"—then follows a description by metes and bounds. The time-limit · clause, "meaning to convey all the standing timber upon said above described premises and said J. B. Bean shall have three years from April 1, 1905, for the purpose of cutting and removing said timber," is a paragraph by itself following the description and immediately preceding the habendum. The words of the habendum in essential respects are like those of the grant, "all our right and title in and to said quitclaimed standing timber with the appurtenances thereof, to the said J. B. Bean, his heirs and assigns forever." And the words of the grantors' covenant next following are equally unlimited and positive in character, "that from and after the ensealing of these presents, we * * * will have and claim no right in, or to the said quitclaimed standing timber." Such use of the words "standing timber" in the habendum and in the covenant is significant. The word generally used in such connection in quitclaim deeds is *premises*, and is well adapted to designate the interest or estate intended to be conveyed, let it be all of the grantors' "right and title" in and to the property described, or a lesser interest. *Smith* v. *Pollard*, 19 Vt. 272; *Cummings* v. *Dearborn*, 56 Vt. 441. It

may well be asked why all the different parts of the deed, including the fore part of the paragraph containing the time-limit clause, were thus written in apt terms to effect an absolute and unconditional sale, unless such a sale was intended by the grantors.    It is pretty difficult to understand why the habendum and the covenant following it were peculiarly written in a way most consistent with an absolute grant, and inconsistent with the idea of conveying a limited or conditional estate, if the latter was intended.    Indeed, there is nothing on the face of the instrument tending to support a construction giving such an estate only, except the time limit clause itself; and this clause, construed in the light of its purpose gathered from a consideration of the contract as a whole (*McLean* v. *Windham Light & Lumber Co.*, 85 Vt. 167, 81 Atl. 613,) may, without doing violence to the language used, be considered a covenant not affecting the independence of the grant, but fixing a time within which entry might be made upon the land for the purposes connected with it.    It is said by Chancellor Kent (4 Kent's Com. 132.) and quoted with approval by this Court in *Palmer's Exr.* v. *Ryan*, 63 Vt. 227, 22 Atl. 574, that, "If it be doubtful whether a clause in a deed be a covenant or a condition, the courts will incline against the latter construction."    We hold therefore that the deed from Saxby and others to Bean constituted an absolute conveyance of the standing timber, and that the clause therein, pertaining to cutting and removing the timber, is a mere covenant giving the right of entry upon the land for such purpose during the period named.    Consequently the charge to the effect that if there was no extension of time, the lumber not removed from the land before the first day of April, 1908, became the property of Saxby, was error.    *Hoit* v. *Stratton Mills*, 54 N. H. 109, 20 Am. Rep. 119; *Magnetic Ore Co.* v. *Markbury L. Co.*, 104 Ala. 465, 16 South. 632, 27 L. R. A. 434, 53 Am. St. Rep. 73; *Irons* v. *Webb*, 12 Vroom, 203, 32 Am. Rep. 193; *C. W. Zimmerman Mfg. Co.* v. *Daffin*, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58.

The plaintiff cites the cases of *Strong* v. *Eddy*, 40 Vt. 547, *Judevine* v. *Goodrich*, 35 Vt. 19, and *Ordway* v. *Farrows*, 79 Vt. 192, 64 Atl. 116, 118 Am. St. Rep. 951, as authorities supporting his contention.    In *Strong* v. *Eddy*, the

construction of the contract in this respect was not called in question. The plaintiff's brief before us says in that case "it was conceded that the words there used created a condition and the court so construed them." In the Judevine case the grantors conveyed by deed the land on which the "French Meeting House" was situated, "ever reserving the said meeting house and meeting house sheds, and all stones on the premises, and the privilege of getting said house, sheds and stone off from the premises till the 1st day of April, 1853. We having the privilege of leaving what stone we choose to at said time." The stone described in the deed were the foundation stone of the buildings on the land. The plaintiffs removed the buildings, and a part of the stone before April 1, 1853. The remainder of the stone the defendant took and converted to his own use. The intention of the parties, as collected from the deed and the character of the transaction, was held to be that the plaintiffs should have no right to the property after the time named, unless they removed it from the premises before then. The fact that by the reservation the grantors had "the privilege of leaving what stone" they "choose to at said time," having reference to the expiration of the time limited, was quite indicative of an intention to make the ownership conditional on such removal, and so far as the case shows there was no indication of a contrary intention. In the Ordway case the estate created by the conveyance of the timber was by the express terms of the deed dependent upon the "condition" that he remove the timber within the time specified. There is nothing in those cases indicating that the deed upon which the right to the timber now in question rests has been given a wrong construction, and hence they are not in conflict with the views here expressed.

By Beans' conveyance to the defendants, they acquired all his right and title in and to the standing timber, and the same right of entry as an appurtenant thereof. *Yale* v. *Seeley*, 15 Vt. 221. The plaintiff took his conveyance of the land charged with full knowledge of the defendant's ownership of the lumber and bark thereon, and of whatever rights and privileges they had in connection therewith. By that conveyance the plaintiff acquired no right or title to said lumber and bark, for the Saxbys had none which they could convey. It follows that the value

of the logs and bark on the land at the time of the plaintiff's purchase is not an element of damages which can be recovered in this action, and the exception to the failure of the court to charge in compliance with the defendants' eleventh request must be sustained. *Hoit* v. *Stratton Mills*, before cited; *Plummer* v. *Prescott*, 43 N. H. 277. But the time for cutting and removing the timber being expressly fixed in the deed of sale, the defendants, without a new license by virtue of which they could enter, were trespassers in entering to remove the lumber and bark after the plaintiff became the owner of the land, and are liable for the damage done to him by such wrongful entry.

The court charged upon the question of the extension of the license by parol, the effect thereof if extended, and its revocation, to some portions of which exceptions were saved. However, the bill of exceptions gives us no light regarding the evidence bearing thereon, other than the allusions thereto in the charge, and the conveyance of the land by the Saxbys to the plaintiff, which is not sufficient for a proper understanding of the situation. Consequently these exceptions are not considered.

The other questions argued are not likely to arise on a new trial of the case.

*Judgment reversed, and cause remanded.*