### Edward H. Deavitt *v.* Washington County.

October Term, 1902

Present: Rowell, C. J., Tyler, Munson, Start, Stafford and Haselton, JJ.

Opinion filed February 5, 1903.

### *Deed—Construction—Easement—Eminent Domain—Allegations.*

A deed which grants the use, in common with the grantor, of a dooryard adjacent to the granted premises, creates an easement in such dooryard.

Such an easement inures to the benefit of the grantee's heirs and assigns, when such appears to be the intent of the grant.

While the *habendum* of a deed cannot enlarge the grant, it may be called in to aid in its construction.

An easement can be taken by right of eminent domain, and, when it attaches to the land itself, it is acquired by condemnation of the land.

An easement in fee cannot be extinguished by an unauthorized use of it.

APPEAL IN CHANCERY. Heard on demurrer to the bill at the September Term, 1902, Washington County, *Watson*, Chancellor. Demurrer sustained. The orator appealed.

*Edward H. Deavitt, pro se.*

The deed of May 4, 1851, created an easement in the dooryard. *Cross* v. *Pike*, 59 Vt. 324; *Hale* v. *Barrows*, 22 Vt. 240; Wash. Easements, 511; *Rowbotham* v. *Wilson*, 8 E. & B. 143; *Crawford* v. *Neff*, 3 Walk. 61.

The three things to be considered are the deed, the situation of the parties, and the purpose of the grant. In the case at bar:

(1) The deed does not undertake to convey any interest in the land comprising the dooryard,—the language refers to use and occupation, and nothing is said concerning the land itself.

(2) The situation of the parties was such that after the conveyance of 1851, it was necessary for William to go across his father's dooryard to get to the highway.

(3) The purpose seems to have been a grant of the father to the son of a right of way across the dooryard to the highway.

Such a construction of the transaction gives a natural and ordinary meaning to the language of the conveyance.

But whether the right granted was an easement or mere license, the defendant did not acquire it by condemnation proceedings; and in either event, the right was destroyed by taking the land for the purpose of a county jail, and it makes no difference whether the right was personal to William Howes, or descended to his heirs. *Clark* v. *Glidden,* 60 Vt. 702; 3 Kent's Com. 592.

It might be inferred that the deed granted the privilege of occupancy as long as both parties desired; but no burden was attached to the land of Joseph Howes, and the *habendum* to William and his heirs is not consistent with such a construction, because the conveyance of the fee of the land described by courses and distances would require such an *habendum* had the language concerning the dooryard been left out entirely. Nor can the *habendum* extend the meaning of the terms used in premises. *Smith* v. *Pollard,* 19 Vt. 272.

But assume that the clause in question created an easement, and that there existed a right of way across the dooryard at the time of the condemnation proceedings; when the William Howes land was taken by right of eminent domain for a public purpose, the easement was extinguished, for that was a different purpose,—an additional burden upon the dooryard parcel, and no compensation was tendered the owner therefor. Wash. Easements, Chap V., s. 3; *Rutt* v. *Tyler,* 3 Day, 470; *In Re Private Road,* 1 Ashm. 417; *Hills* v. *Miller,* 3 Paige, 254; *Hancock* v. *Wentworth,* 46 Mass. 446; *Manure Company* v. *Donald,* 4 H. & N. 8; *Central Wharf* v. *India Wharf,* 123 Mass. 567; *Society* v. *Railroad Co.,* 3 Hill 567; *Starr* v. *Railroad,* 24 N. J. 592; *Indianapolis* v. *Kingsbury,* 101 Ind. 200.

When the William Howes house ceased to be used for a dwelling, was moved away, and the county jail erected, the easement was at an end. Wash. Easements, 533; *Hahn* v.

*Baker Lodge,* 21 Ore. 30; 10 Am. & Eng. Enc. 438; *Gerrard* v. *Cook,* 2 B. & P. 109.

If the right in question were treated as a way of necessity, it would be extinguished when the owner of the dominant estate could pass without interruption over his own land to the highway. This the county can do. So the reason and necessity for the easement have ceased. Wash. Easements, II Chap., s. 2; *Hahn* v. *Baker Lodge,* 21 Ore. 30; *Viall* v. *Carpenter,* 14 Gray 126; *Smith* v. *Tarbox,* 31 Conn. 581.

The orator being in possession of the land in question, a bill in chancery is the proper remedy, for by that he obtains discovery of the defendant's title, and if the orator establishes his own, he is entitled to an injunction restraining the defendant from setting up an adverse title. *Hyser* v. *Mansfield,* 72 Vt. 71; 4 Dest. Fed. Pro. 468; *Eldridge* v. *Smith,* 34 Vt. 484; *Hodges* v. *Griggs,* 21 Vt. 280; *Shults* v. *Shults,* 159 Ill. 654; Note to *Helden* v. *Helden,* 45 Am. St. Rep. 373.

*Senter & Senter* for the defendant.

A careful consideration of every part of the deed of 1851, indicates that the grantor intended to reserve an equal interest with the co-tenant in the dooryard, and that this reservation should not be construed to be a personal one, only. There is no forfeiture provided for in this deed. He parted with the title absolutely, and the orator owns no more interest in that dooryard than Joseph Howes did after the execution of the deed.

Under the allegations in the bill, Mrs. Walton was a tenant in common with the orator's grantor in the use reserved of the land in question. This was such a right in property that the power of eminent domain could be exercised, and it could be condemned, as it was. Lewis Em. Dom., s. 262, a; Mills

Em. Dom., s. 31; *Railroad Corp.* v. *Railroad Co.,* 2 Gray 35; *Black* v. *Canal Co.,* 22 N. J. Eq. 416; *Railroad Co.* v. *Kerr,* 72 N. Y. 330.

ROWELL, C. J.    On May 14, 1851, Joseph Howes owned two dwelling-houses in Montpelier Village, situated on the west side of Elm street.    He lived in one, and his son William, in the other.    He owned a dooryard extending to the street, and his house fronted it to the south, and William's to the east. On that day, by a quitclaim deed in usual form, he conveyed to William the house in which William lived, and the lot on which it stood, describing it by courses and distances, but not including the dooryard.    In the granting part of the deed, immediately following the description, are these words:    "And the dooryard as now fenced, is to be used and occupied by the said William and myself in common; and neither is to do any act or thing to incommode the occupancy of the other; and both are to share equally in fencing the same."    It was necessary for William to cross this dooryard, to get to the street.    William's title came to and vested in Mrs. Walton through several mesne conveyances, and the County has entered upon and taken her land by statutory authority for the site of a County jail, and also took, specifically, as far as it could, her interest in the dooryard; but the orator denies that it thereby acquired that interest.

Joseph's title to the premises and rights not conveyed to William, has come to and vested in the orator, who is in possession of the property, and wants to erect a building on the dooryard, and prays for a decree that the County has no interest nor estate therein; that the orator's title thereto is good and valid; that the County be perpetually enjoined from asserting claim thereto adverse to the orator; and for general relief. The bill is demurred to for want of equity.

The orator does not really claim that the deed to William did not create an easement in the dooryard, but rather concedes that it did, at least to the extent of a right of way to the street, but contends that whatever the right, it was personal to William, and if not, that it was extinguished when the County took the land for a jail, as that is a different use and an additional burden, for which no compensation was tendered to the owner of the dooryard.

It is clear that the deed did not convey the fee of the dooryard, but created only an easement therein, for it did not grant the whole use and occupancy, but only a use and an occupancy in common. *Tupper* v. *Ford,* 73 Vt. 85, 50 Atl. 547. And the fair import of the language, construed in the light of the attendant circumstances, makes the easement one, not only of a right of way, but of use and occupation in common for the general purposes of a dooryard as well. And the intent of the deed seems to be that the easement should enure to William's heirs and assigns, for the *habendum* mentions them, and although it cannot enlarge the grant, it may be called in to aid in its construction, and the word "premises" used in the *habendum* may apply to the easement as well as to the land. *Cummings* v. *Dearborn,* 56 Vt. 441. Indeed, such an easement is land, under our statute, for it is an hereditament. V. S. 9.

The easement attached, and is appurtenant, to the land conveyed to William, and enured to the County, especially as it is in privity of estate with William, the bill admitting for present purposes that the County acquired title to said land by its condemnation proceedings. And it still has the easement, unless it has lost it in the way claimed by the orator.

But it is not essential that the County should be in such privity, having entered upon the land, for, as pointed out in

*Morton* v. *Thompson,* 69 Vt. 432, 38 Atl. 88, there is a distinction between things that run with the estate in the land, as, for instance, a right of way granted by a tenant for years, and things that are attached to the land itself. In the latter case, of which easements like the one in question are a conspicuous example, when the right is once acquired, whether by prescription, grant, or covenant, it attaches to the land for the benefit of which it was acquired, and sticks to it so fast that it goes with it, regardless of privity, into all hands, even those of a disseisor. It is immaterial, therefore, whether the County acquired the easement specifically by its condemnation proceedings, for it sticks to the land, which confessedly it did acquire. But as the bill admits that those proceedings "were in accordance" with the act authorizing them, no reason is apparent why the County did not thereby acquire the easement, if it was within the scope of the act to do so, which is not denied, for an easement can be taken by the right of eminent domain as well as land, according to the authorities.

But the orator claims, as we have said, that the County lost the easement when it took the land for a jail, as that is a different purpose and a more burdensome use, for which no compensation was tendered. The bill does not allege that the use is different, save what may be inferred from the allegation of purpose for which the land was taken, nor allege, by implication even, that it is more burdensome, and therefore we cannot say that it is.

But as this is an easement in fee, it cannot be extinguished by an unauthorized use of it. If put to such use, forfeiture is not the remedy.

*Affirmed and remanded.*