ROBERT JOHNSON ET AL. *v.* ADAMS J. BARDEN ET UX.

Special Term at Rutland, November, 1911.

Present: MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 14, 1912.

*Deeds—Construction—Life Estate—Intention of Parties— Habendum Repugnant to Granting Clause—"Heirs"— "Forever."*

Where, by the granting clause in a deed from a daughter to her parents for the expressed consideration of $1, the grantor does "give, grant, bargain, sell, convey, and confirm unto the said grantees, heirs and assigns" a designated farm, and the habendum states that the grantees are to hold the premises "their lifetime, to them and their own use, benefit, and behoof forever," the words "heirs and assigns" in the printed form having been stricken out of the habendum, and also out of the covenant, which is followed by a clause wholly in writing stating that "the conditions of the above conveyance are such that at the death of" both of the grantees the deed should become "null and void otherwise to remain in full force and virtue," the estate conveyed is a life estate only, the failure to strike out the words "heirs and assigns" in the printed form of the granting clause, as was done in the habendum and covenant, being apparently an inadvertance.

It was a rule of the common law that, if the habendum or any later clause in a deed was repugnant to the granting clause, the granting clause should control.

At common law it was not the word "heirs" alone that made an estate of inheritance, but that word accompanied by a pronoun showing whose heirs.

Though it came finally to be settled at common law that a grant to one and "heirs," without the pronoun showing whose heirs, was sufficient to convey a fee simple, yet a grant to two and "heirs," without the appropriate pronoun, passed a life estate only for a want of certainty as to whose heirs were intended, even though the grantees were husband and wife.

The use of the word "forever" in the *habendum* of a deed to the grantees, "their lifetime, to them and their own use, benefit, and behoof forever," would not, even at common law, prevent the grant being only of an estate for life.

In this State the common law rule that the granting clause of a deed controls where there is a conflict between it and the other clauses is a rule of construction and not of positive law, and so must yield to the master rule that the intention of the parties, as plainly evidenced by the deed taken as a whole, must govern.

In order that, where the meaning of a deed is uncertain, the intention of the parties be not left to mere conjecture, resort must be had to well-settled, but subordinate, rules of construction, to be always applied as such, and not as rules of positive law.

An ultimate finding that defendants committed waste will not be disturbed on review merely because of subordinate findings having a contrary tendency, but none of which is controlling, where it does not appear that the lower court did not give those findings due weight.

APPEAL IN CHANCERY. Heard on the pleadings and findings of facts by the Chancellor at the March Term, 1911, Rutland County, *Butler,* Chancellor. Decree for the orators. The defendants appealed. The opinion states the case.

*T. W. Moloney* and *S. E. Everts* for the orators.

*M. C. Webber* for the defendants.

HASELTON, J. This is a suit in chancery brought here on an appeal by the defendants, Adams J. Barden and his wife Annette Barden, from a decree in favor of the orators.

May 1, 1900, Mabel V. Bush, conveyed to the defendants, whose only child she was, a farm situated in the town of Wells. The farm consists of some fifty or sixty acres and has on it a house and other buildings. Five or six acres of the farm are used for tillage, and the remainder is either pasture or woodland. The consideration expressed in the deed is one dollar, and by the granting clause the grantor does "give, grant, bargain, sell, convey and confirm unto the said Adams J. Barden and wife Annette Barden heirs and assigns" the farm in question.

The habendum reads: "To have and to hold the above granted premises with all the privileges and appurtenances thereof to the said Adams J. Barden and wife Annette Barden their life time, to them and their own use, benefit and behoof forever." A printed form was used by the draftsman and the printed words "heirs and assigns" were struck out from the habendum and the words "their life time" were written in.

In the covenant, the words "heirs and assigns" are also struck out of the printed form.

Then follows a clause which is wholly written in and which reads: "The conditions of the above conveyance are such that at the death of both the aforesaid Adams J. Barden and his wife Annette Barden then this deed becomes and is null and void, otherwise, to be and remain in full force and virtue."

This is an inartificial but unmistakable way of saying that the estate conveyed is a life estate only.

At the time of this conveyance in 1900, the grantor, Mabel V. Bush, was a widow with three children. Later she married and thereafter she and her husband deeded the farm to the orators "subject to the life lease of Adams J. and Annette Barden in said real estate."

The orators, Robert Johnson and another, brought this bill claiming as reversioners, and that the defendants, Adams Barden and his wife, have only a life estate, and have committed and are threatening to commit waste. The defendants claim that by virtue of the deed given them by their daughter Mabel, in 1900, they are the owners in fee simple of the land.

Nothing can be more clear than that the intention of the grantor, as gathered from the whole deed from Mabel V. Bush to her father and mother, was to convey to them a life estate merely. The intention of a written instrument gathered from all that is within its four corners ordinarily controls, but in the

construction of deeds the common law rule, which the defendants invoke here, was that effect will be given to the intention of the parties as drawn from the instrument, if such effect can be given without violating some rule of law; and it was a rule of the common law that if the habendum or any later clause in a deed was repugnant to the granting clause, the granting clause would over-ride the repugnant clause or clauses. This rule might well be thought to have been a rule of construction merely, and one to be invoked only to aid in determining the intention of the parties. But it was exalted into a rule of positive law. As illustrations of this rule, if a grant was to one and his heirs, and the habendum was to the heirs of his body, the habendum was given force because it did but explain what heirs were intended in the granting clause; but if a grant was to one and his heirs and the habendum or a later clause was to the grantee for his life, or the life of another, the habendum or later clause was considered void as being repugnant to the meaning conveyed by the words ''his heirs'' as previously used. The reason commonly given for this hard and fast rule was that one could not be allowed by subsequent limitations to defeat his own grant. But this was no reason; for there was no grant until the instrument was completed and executed; and all parts of the instrument spoke together. Another and more plausible reason was that the rule conduced to certainty and security; but this reason is no better than the other, as has been demonstrated in the construction of wills, where the expressed intention of the testator is always controlling, and where technical rules are resorted to only for the aid they may give in arriving at such intention, and where the security of testators in the disposition of their property and the stability of testaments rests upon the preeminent rule that the expressed intention shall govern.

We first consider this case upon the assumption that the rules of the common law, which could find application to the deed in question, remain in full force in this State.

By the common law it is not the word ''heirs'' alone which makes an estate of inheritance, but the word ''heirs'' accompanied with a pronoun which shows its application, for, said Littleton, these words ''his heirs'' only make an estate of inheritance. Commenting upon this passage of Littleton, Coke says: ''That every word is worthy of observation,'' and that if a man grant land unto two and heirs, omitting the pronoun, the

grantees have but an estate for life on account of the uncertainty; and he goes on to remark that while it is said that if land be granted to one man and heirs, omitting the pronoun, a fee simple passes, it is, nevertheless, safe to follow Littleton. So Coke gives no sanction to the saying that, in the case of a deed to one, the word "heirs" unaccompanied by a pronoun to indicate whose heirs, is sufficient to convey a fee simple.

Coke did not care to give currency to the doctrine that a deed to one and "heirs" without the use of a pronoun would convey a fee simple by saying who said so, but he doubtless referred to what Sergeant Saunders, Edward, not Edmund, had recently said as counsel in the case of *Colthirst* v. *Bejushin,* 1 Plowden, 21, 28. For the Sergeant had there claimed that to be the doctrine, and it came to be unquestioned.

In Shepard's Touchstone, it is said that if a grant be made to one and "heirs" without a pronoun a fee simple passes but that if a grant be to two and "heirs," without the appropriate pronoun, an estate for life only will pass for want of certainty as to whose heirs are intended.   p. *101.

The same law is laid down in Comyn's Digest, and by Cruise in his Digest of the Law of Real Property. Com. Dig. Estates, A. 2; Cruise Dig., Greenl. ed., vol. 4, tit. 32, chap. 22, §3, b. 2, p. 657.

Here the grantor struck out the words "heirs and assigns" whenever they occurred in the printed form used, except in the granting clause; and there, while she omitted to strike them out, apparently from oversight, they do not, according to the rule of the common law which we have reviewed, make the grant one of inheritance, for the grant is to two, and no pronoun is inserted before the word "heirs."

True, the two grantees here are husband and wife, considered as one person at common law, and a deed to them jointly created a peculiar estate, neither a tenancy in common nor a joint tenancy, but an estate by entirety such that each was deemed to be seized of the whole and to own the whole. Co. Litt., 187; *Corinth* v. *Emery,* 63 Vt. 505, 22 Atl. 618, 25 Am. St. Rep. 780; *Laird* v. *Perry,* 74 Vt. 454, 52 Atl. 1040, 59 L. R. A. 340.

But in case of a deed to husband and wife the heritors may be "their" heirs or "his" heirs or "her" heirs. *Davis* v. *Davis,* 30 Vt. 440; Litt. Tenures, §§285, 26, 27, 28.

This being so, if these refinements are pursued, it might well be claimed that at common law a deed to husband and wife and "heirs," without more, would convey a life estate only for want of certainty as to whose heirs were intended. We have not observed how precisely such a case was treated, if it was treated, and we have made no extensive investigation of the matter, for we do not find it necessary to rest the decision of this case upon the curious refinements of feudal law, in disregard of the actual and expressed intention of the parties.

Mention is made in argument of the fact that, although the grantor struck out the words "heirs and assigns" and inserted the words "their life time" after the names of the grantees in the habendum, she left standing after the words "to them" the words "and their own use, benefit and behoof forever." But the word "forever" was well enough allowed to stand, for it may well be used in the grant of an estate for life. Practically the whole law which we have discussed is condensed into a few lines by Littleton where he says in his concise manner: "If a man would purchase lands or tenements in fee simple, it behoveth him to have these words in his purchase, To have and to hold to him and to his heirs; for these words (his heirs) make the estate of inheritance. For if a man purchase lands by these words, To have and to hold to him forever, or by these words, To have and to hold to him and his assigns forever; in these two cases he hath but an estate for term of life, for that there lack these words, 'his heirs,' which words only make an estate of inheritance in all feoffments and grants." Litt. Tenures, §1.

It is worth observing that Littleton makes it the proper office of the habendum to define the quantity of the estate granted, and this long was its proper office, while the chief office of the premises was to describe the land; and so it came about that the clause describing the land and the land described are both spoken of as "premises."

Nathaniel Chipman considered that many of the rules and maxims resulting from the system of feudal tenures were "full of absurdity" and were not operative here; that the English lawyers and judges had been "habituated to pursue the rights of real property through a thousand intricate ambages and circuitous labyrinths"; and that so far as transfers of real estate are concerned the rules of the common law, applicable here, are few and simple. His language is general in character

and is found, in part in his dissertation on the statute adopting
the common law, and in part in his dissertation on our statute
of conveyances in its earlier form.   N. Chipman, Rep. and Diss.
122-129, 145, 146.

Pursuant to these views the intention of the parties has
prevailed in this State in the construction of deeds unless such
intention was contrary to some positive law, and no rule of con-
struction, unless statutory in character, has been recognized as
positive law.   Rules of construction have been found useful in
arriving at the intention expressed in a deed, but we have no
case in which a mere rule of construction has been allowed to
override the intention as drawn from the deed itself.

In *State* v. *Trask,* 6 Vt. 355, 27 Am. Dec. 554, two clauses in
a deed were repugnant and the Court said: "The first clause was
probably introduced as mere words of form, without apprehend-
ing their import, and is clearly repugnant to the manifest intent
of the grantor.   We have no difficulty therefore in giving effect
to the deed according to that intent."   In this case the broad
doctrine was stated and applied that "if the intent of the par-
ties is clearly ascertained upon the face of the deed, courts will
give it effect; and those parts which are inconsistent and re-
pugnant to that intent will be rejected."   This case was decided
in 1834, during what the late Chief Judge Taft called "the
palmy days of the court," when Williams, Phelps, Royce, Col-
lamer and Mattocks were the Judges; and the eulogium quoted,
which is acquiesced in by every one versed in the judicial history
of this State, was based upon what Judge Taft denominated
"the sound, prompt, wholesome and effective justice that was
always administered wherever they sat."

*Mills* v. *Catlin,* 22 Vt. 98, is an illustration and application
of the doctrine that in construing the grant in a deed, and the
quantity of interest thereby conveyed, every part of the deed
may and should be resorted to for the purpose of ascertaining
the intention.   The language of the Court in reference to the
deed there under consideration is "this deed should be construed
according to the intention of the parties as manifested by the
entire instrument"; and again the Court say that the rule "re-
quires the construction to be on the entire deed."

It seems to have been recognized from the first that the
division of a deed into such parts as the premises, the habendum
and the tenendum, was pretty much a matter of capitalization

and punctuation, and our Court was never greatly impressed with the idea that it is of vital importance in what part of a deed the intention is expressed so long as it finds somewhere clear and adequate expression.

In *Gorham* v. *Daniels*, 23 Vt. 600, it was held that the Statute of Uses, 27 Henry VIII, Chap. 10, has never been adopted in this State; although English Statutes of Henry's time, and later until 1760, are a part of the law of this State so far as they are applicable to our situation and circumstances, and are not inconsistent with the constitution or with some act of the legislature. The case was twice argued and the conclusion stated above was reached, although the Court recognized the fact that the Statute of Uses was then considered in force in most of the states; and although Mr. Justice Thompson of the Supreme Court of the United States, while presiding in the Circuit Court in this State, had held that the Statute of Henry VIII, had always been in force in this State.

The opinion in *Gorham* v. *Daniels* reviews the early history of the State, indorses the views of Judge Chipman already adverted to, and lays stress upon the doctrine that while the forms and words of deeds derive their meaning and operation, to some extent, from the common law as modified by English Statutes, our system of conveyancing was intended to be simple and capable of being understood by the people of our State "without the necessity of resorting to the study of the subject in other quarters."

In *Blake and wife* v. *Stone*, 27 Vt. 475, questions arose upon the construction of the deed of Benjamin Burt, and in this Court in considering whether or not his grantee, Leonard Burt, took a life estate simply, Chief Justice Redfield said: "There can be no doubt we think that such was the intention of the original grantor, Benjamin Burt. And as we have a statutory system of conveyances or transmission of the title of real estate, wherein we have more or less explicitly departed from many of the common law provisions upon the subject, it deserves serious consideration in my judgment whether we should make any distinction between a covenant to convey, a will or devise, and a deed, in regard to the indispensable necessity of the use of the word heirs to create a fee simple or fee tail, or whether that word is always to be regarded as one of limitation and never of purchase, in a deed, without reference to the clearly expressed inten-

tion of the parties. The question as it affects deeds will, prob-
ably, ultimately settle down upon the same basis it has at common
law in regard to covenants and devises, as one of intention
merely."

In *Smith* v. *Hastings*, 29 Vt. 240, it was considered by a
unanimous Court, the opinion being delivered by Chief Justice
Redfield, that the decision in *Blake* v. *Stone*, left the rule in
Shelly's Case without force as a positive rule of law and recog-
nized it as merely a rule of construction, for such aid as it might
furnish in arriving at the intention of the parties as gathered
from the whole deed; and in *Smith* v. *Hastings*, the rule in
Shelly's Case was overborne in the decision, and it was declared
that "as our system of conveyancing is statutory, there is no
necessity and no reason in adopting any rule of construction
which will tend to carry us one side of the true purpose and
intention of the instrument."

By the overwhelming weight of common law authority the
rule in Shelly's Case was a positive rule of law not intended to
effectuate the intention of the parties to a deed but rather to
defeat such intention in furtherance of the feudal policy.

In this country it was generally received and adopted.
For a concise statement of it and of the jealousy with which it
was guarded as an imperative rule of law there is nothing better
than the pages devoted to it by Chancellor Kent, who, writing
after the rule was abolished by the legislature of New York, said
that what he had written on the subject was to be considered, so
far as his native State was concerned, as "an humble monument
to the memory of departed learning." 4 Kent's Comm. 214-233.

In refusing to recognize the rule in Shelly's Case as positive
law in this State, our Court took a step which emphatically
demonstrated that mere technicalities have here a very limited
application in the construction of deeds.

In *Flagg* v. *Eames*, 40 Vt. 16, 94 Am. Dec. 363, a deed was
construed in accordance with the manifest intent shown by the
granting clause taken as a whole, and in accordance with the
intent shown by the entire deed taken together, and this the
Court specifically said. Rules of construction are stated, but it
is there said, and the saying is applicable here, "it is quite ap-
parent that the deed was very unskillfully drawn, and that the
words, or terms, used by the scrivener which import a convey-
ance of an estate in fee simple were introduced into the deed as

mere words of form, without the slightest apprehension of their legal meaning or effect; and they are clearly repugnant to the general intent and purpose apparent on the face of the deed.'' The Court did not in fact determine the case by any technical rule, for they say that their conclusion is reached whether they regard the premises of the deed alone or whether they ''take every part of the deed into consideration in seeking to ascertain its object and general intent''; and they state the rule that ''when the manifest intent of the deed appears the words which are repugnant to it are to be rejected.'' This case is relied on by the plaintiffs and by the defendants. But since the manifest intention of the deed taken as a whole coincided with the manifest intention of the granting clause, and was given effect, the decision itself has little or no bearing either way upon the question now under consideration.

In *Collins* v. *Lavelle,* 44 Vt. 231, there was under consideration a deed which in the granting part was a warranty deed in the usual form. But the grant of a fee simple was defeated by a proviso written above the signature to the deed which made the intention of the parties clear, and the Court considered that it had nothing to do but to educe ''the just result as between the parties.''

In *Gilkey* v. *Shepard,* 51 Vt. 546, it was said by this Court that the ''feudal system engrafted upon the Common Law of England a construction of deeds and conveyances of real estate that overruled the intention of the parties, and, in many cases, worked great injustice.'' Reference is made to the fact that the rule in Shelly's Case has never been followed in this State, and it is declared that the rule in this State is that, ''deeds, like other instruments, should be so construed as to give effect to and carry out the intention of the parties.'' This rule was not only declared but was acted upon in the decision of the case, which involved the construction of a deed given in 1833 by Judge Asa Aikens. This excellent lawyer, drawing his deed within a few months of the time when the decision in *State* v. *Trask,* already referred to, was rendered, seems to have had a well-grounded confidence that his expressed intention would not be defeated by a process which Bentham likened to forgery, but which we will call simply the misapplication of rules of construction.

In *Robinson* v. *Railroad Co.*, 59 Vt. 426, 10 Atl. 522, there was inconsistency in the granting clause of a deed, and a clause following the description which limited what had gone before, and the later clause was given effect because to do so seemed to be in accordance with the manifest intent of the parties. Reference was made to the fact that in the conveyance a printed blank was used and that the limiting clause was written in where it was because of a convenient blank space in the printed form, a fact of striking significance here.

The principles which in this State govern the construction of deeds have been fully and thoroughly considered in the recent case of *DeGoosh* v. *Baldwin & Russ*, 85 Vt. 312, 82 Atl. 182. The minor rules of construction are there given their due weight, but the doctrine is reasserted and put beyond question that the intention of the parties to a deed as gathered from the whole instrument must govern, and that this rule is as applicable to deeds as to other written instruments.

This rule, and no other, affords security and certainty in business transactions whether or not they relate to real estate in whole or in part. *McLean* v. *Windham Light & Lumber Co.*, 85 Vt. 167, 81 Atl. 613.

In this State the rule invoked by the defendant is a rule of construction merely and not a rule of positive law, and like the rule in Shelly's Case, it must yield to the master rule that the intention of the parties as drawn from the whole deed must govern. We have no case in which the clearly expressed intention of the parties to a deed has been defeated by treating a rule of construction as a positive rule of law.

The positive laws, which in this State may defeat the clearly expressed intention of the parties to a deed, are illustrated by the statute as to preventing the entailing of estates.

Minor rules of construction are of great value, since there are many cases where the intention of the parties to a deed can only be conjectured, and since in such cases certainty requires that resort be had to technical rules of construction, like the rule that the words of a grant are to be construed more strictly against the grantor. *Huntly* v. *Houghton*, 85 Vt. 200, 81 Vt. 452. The meaning of deeds is not left to conjecture, for where the meaning is uncertain, resort must be had to well-settled but subordinate rules of construction, to be treated as such, and not as rules of positive law. See the cases already cited; and see

also *Smith* v. *Pollard,* 19 Vt. 272; *Adams* v. *Dunklee,* 19 Vt. 382; *Congregational Society* v. *Stark,* 34 Vt. 243; *Chapman* v. *Longworth,* 71 Vt. 228, 44 Atl. 352; *Deavitt* v. *Washington Co.,* 75 Vt. 156, 53 Atl. 563.

The doctrine in this State was from the first applied so deliberately and with such conscious departure from technicalities that it is unprofitable to consider just how fully it is recognized in other States in consequence either of judicial decisions or of legislation.

But the doctrine held in this State now widely prevails, as may be seen from the notes to the following selected cases: *Post* v. *Weil,* 115 N. Y. 361, 12 Am. St. Rep. 809, 22 N. E. 145, 5 L. R. A. 422, and *Triplett* v. *Williams,* 149 N. C. 396, 63 S. E. 79, 24 L. R. A. (N. S.) 514. The same may be seen from an examination of Devlin on Deeds (1911), §§836, 836 a, 837, 840.

The defendants had only a life estate in the premises in question, and at the time the injunction in this case was served had been and were cutting timber from the premises for sale. It was not their purpose to cut any more timber at that time, but they claimed the right to cut and sell all the timber and threatened to do so. The timber that was being cut, and that had been cut, was small pine from eight to twelve inches in diameter at the stump. The court found that the timber was cut for sale to obtain money to pay taxes and for general family purposes and not for estovers.

The court adjudged and decreed that the cutting of timber to the extent of two thousand nine hundred and fifty-two feet, worth, as the court found, twenty-nine dollars and fifty-two cents, constituted waste, and enjoined the defendants from the further cutting of timber for sale and from committing further waste, and decreed that they pay to the orators the sum of twenty-nine dollars and fifty-two cents with costs.

On the assumption that the defendants are life tenants they claim that what they did, did not amount to waste, and that the orators were not entitled to an injunction or to damages. Some subordinate facts are referred to in support of these claims, but no one of them is controlling as matter of law, and there is no reason to suppose that they were not given due weight by the court of chancery.

*For the reasons already stated, the decree is affirmed and the cause is remanded.*