## Woods v. Cook et al.

(Decided March 17, 1933.)

JOHN WATTS for appellant.

R. L. BRONOUGH and W. J. BAXTER for appellees.

JOHN S. DEERING amicus curiæ.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from the judgment of the Jessamine circuit court, overruling appellant's exceptions filed as purchaser to confirmation of judicial sale of certain lands, directed made for satisfaction of appellee's mortgage debt adjudged foreclosed.

On the —— day of February, 1929, James Cook died intestate, leaving surviving him Kate Cook, his widow, and seven children, Nannie Powell, John Allen Cook, Rena Hunt, Melvin Cook, James B. Cook (who died during the pendency of this action, leaving a widow, Lucy Mae Cook), Hattie Cook, and Lucille Cook, an infant over fourteen years of age.

On May 11, 1925, James Cook and wife, Kate Cook, executed to the Federal Land Bank of Louisville their note in the sum of $1,000, secured by mortgage on two tracts of land situated in Jessamine county, Ky.

In February, 1931, the widow, Kate Cook, and

others filed their petition to settle decedent's estate in the Jessamine circuit court against Everett Cook as administrator of James Cook, deceased, Lucille Cook, his infant daughter, and the Federal Land Bank of Louisville, alleging that the plaintiffs and defendant Lucille Cook were the widow and heirs at law of James Cook, deceased, and that the defendant land bank was a lien creditor of the decedent.

In the petition they alleged that at the time of James Cook's death, he was the owner of two tracts of land in Jessamine county, containing fifty-four acres, which, upon his death, descended to and vested in the plaintiffs and defendant Lucille Cook, as his widow and only heirs at law.

The defendant land bank filed its answer, asking that it be adjudged a first mortgage lien upon the land described in the petition and that it be sold, subject to its mortgage debt.

Later, it filed its verified amended answer, cross-petition, and counterclaim, seeking judgment and foreclosure of its mortgage debt.

Thereafter, an amended petition was filed, making certain of the plaintiffs in the original action defendants, and further alleging that certain of the defendants, including the infant, Lucille Cook, had become nonresidents of the state of Kentucky and asking the relief sought in the original petition.

Warning orders were issued upon this amended petition and upon the affidavit of the answering defendant land bank filed with its amended answer, etc., and a regular practicing attorney was thereunder appointed to notify these nonresidents, who later duly filed his reports as such.

The cause being then submitted for judgment, it was adjudged that the appellee bank recover its debt and interest; that the decedent, James Cook, died the owner of the lands in question, and upon which it was further adjudged that the said bank held a first and superior mortgage lien, which should be enforced by a sale of the lands as a whole, and the master commissioner was directed to make due and lawful sale thereof.

Pursuant to this judgment, the property, after due advertisement and appraisal, was sold by the commis-

sioner to the appellant, Arthur Woods, who, questioning the title to the land he would receive under the commissioner's deed, filed exceptions to the confirmation of his report of sale and also to the bond executed by appellee bank as required by section 410 (Civil Code of Practice), after rendition of judgment and sale thereunder. His exceptions were in each instance overruled by the trial court.

Complaining of this as error, this appeal is prosecuted.

Appellant's exceptions to the confirmation of sale were based upon the grounds, among others, that he could not acquire a good title to said property under said sale for the reasons that: (1) The decedent, James Cook, to settle whose estate this land was sold, had only a life estate therein; (2) the Federal Land Bank, for whose debt the land was sold, had a mortgage on only an undivided one-eighth thereof.

The merit of these exceptions depend upon the character of decedent's title by which he held these lands, mortgaged by him and his wife to the appellee bank as the fee-simple owner thereof.

Our determination of this question rests upon the construction of the deed under which decedent held title to these lands and what effect is to be given it.

It appears that upon the death intestate of James Cook's father, Pleasant Cook, his lands, including the two tracts here involved, descended to his five children and only heirs at law; that partition of these lands was made by agreed division thereof and exchange of deeds between them, giving effect to this plan; and that, pursuant thereto, four of the deceased Pleasant Cook's five heirs at law, therein executed the following deed to their coheir, James Cook, conveying their undivided interests in this fifty-four acres, allotted him in the division. This deed is as follows:

"This deed, between John C. Cook and Mary Cook his wife, Melvin Cook and Sallie Cook, his wife, Charles Cook and Mary B. Cook, his wife, Maymie Mathews and John S. Mathews, her husband of the County of Jessamine and State of Kentucky, parties of the first part and James Cook of the same County and State party of the second part.

"Witnesseth, that the parties of the first part for and in consideration of the sum of One Dollar cash in hand paid the receipt whereof is hereby acknowledged and the further consideration that the parties hereto being the sole children and heirs of Pleasant Cook, deceased, have mutually agreed to among themselves, divide the real estate of said Pleasant Cook. The land herein described having been allotted to said James Cook in said division, do hereby sell, grant and convey the party of the second part, his heirs and assigns the following described real estate, to wit: All of the undivided right, title and interest of the first parties in and to those two tracts or parcels of land lying and being in Jessamine County, Ky., and described as follows:

"1st. Tract * * * containing Fifty Acres, * * * "2nd. Tract * * * containing four acres, * * *, which said lands upon the death of Pleasant Cook deceased (descended) to and vested in the first parties, John O. Cook, Melvin Cook, Charles Cook and Mayme Matthews and the second party James Cook as his only children and heirs at law. * * *

"To have and to hold the same unto the second part, James Cook for and during his natural life and upon his death said land is to go to and vest in Katherine Cook, wife of the said James Cook and his children, Hattie E. Cook, James B. Cook, Rena Cook, Nannie May Cook, Melvin Cook, John Allen Cook and Lucille Cook absolutely in equal proportions, forever, with covenant of General Warranty."

This deed was signed and duly acknowledged by said parties therein designated as grantors.

By the appellee bank it is contended that the granting clause of this deed conveying the lands in question to James Cook, his heirs and assigns, conveyed him a fee-simple interest in the lands, which cannot be qualified or restricted by its later habendum clause, providing that grantee was to hold the property for and during his natural life and that, upon his death, the same was to go to and vest in his widow and seven children absolutely and in equal portions, with covenant of general warranty. Appellee relies, in support of

its position, on the case of Denney v. Crabtree, 194 Ky. 185, 238 S. W. 398, in which it was held that where there is an irreconcilable conflict between the caption and the habendum clause on the one hand and the granting clause on the other, in such case, under the well-known rule of construction, the granting clause must control.

The appellant, however, on the other hand contends that under the provisions of this deed, decedent took only a life estate as provided by its habendum clause, under the rule that "in construing a deed, all parts of the instrument must be construed together" and therefore technical words in the granting clause, importing a fee, must yield to the following habendum clause limiting the interest of the grantee to a life estate, its language evidencing such intent.

In 17 R. C. L., sec. 6, page 619, it is said:

"It was the rule of the common law that if the habendum or any later clause in a deed was repugnant to the granting clause, the granting clause would override the repugnant clause or clauses, and under this rule if a grant is to one and his heirs and the habendum or a later clause is to the grantee for his life, or the life of another, the habendum or later clause is considered void as being repugnant to the meaning conveyed by the words 'his heirs' as previously used. The modern tendency, however, is to abandon the strict common law rule of construction, the broad doctrine being asserted that in the construction of deeds as in the construction of other instruments the intention of the parties thereto as gathered from the whole instrument must govern. In jurisdictions which adhere to this doctrine it is held that where a deed appears from the premises to give a fee, but the habendum makes it clear that a life estate is intended, the grantees will take a life estate."

Hall v. Wright, 138 Ky. 71, 127 S. W. 516, Ann. Cas. 1912A, 1255; Johnson v. Barden, 86 Vt. 19, 83 A. 721, Ann. Cas. 1915A, 1243.

Also, in 8 R. C. L., sec. 100, page 1046, the rule as to construction of deeds is thus stated:

"The modern tendency is to ignore the technical distinctions between the various parts of a deed

and to seek the grantor's intention from them all, without undue preference to any, giving due effect to all, including both habendum and granting clause, where such can reasonably be done, in order to arrive at the true intention, even to the extent of allowing the habendum to qualify or control the granting clause where it was manifestly intended that it should do so.''

Bodine v. Arthur, 91 Ky. 53, 14 S. W. 904, 12 Ky. Law Rep. 650, 34 Am. St. Rep. 162; Rupert v. Penner, 35 Neb. 587, 53 N. W. 598, 17 L. R. A. 824.

It appears that both sides here concede such to be the rule, recognized by all authorities generally and uniformly applied by this court, that in construing written instruments, including deeds as well as wills, the intention of the maker shall be ascertained, if possible, and applied. Some of the cases from this court recognizing and applying this rule, as stated, are: Atkins v. Baker, 112 Ky. 877, 66 S. W. 1023, 23 Ky. Law Rep. 2224; Henderson v. Mack, 82 Ky. 379, 380, 381; Lawson, etc., v. Todd, 129 Ky. 133, 110 S. W. 412, 33 Ky. Law Rep. 557; Rittenhouse v. Swango, 97 S. W. 743, 30 Ky. Law Rep. 145; Wilson et al. v. Moore, 146 Ky. 679, 143 S. W. 431; Runyon v. Hatfield et al., 154 Ky. 171, 157 S. W. 17.

In Spicer v. Spicer, 177 Ky. 400, 197 S. W. 959, 960, this court, after reviewing the numerous cases wherein it had held that where a will or deed gives full title to the devisee or grantee named as taker of title, the instrument passes an absolute fee and any provision or devise over is void, for the reason that it is inconsistent with or repugnant to the fee, says:

"These cases, however, are not inconsistent with the further doctrine, so often announced by this court, that:

" 'In construing a deed it will be read as a whole, and if, upon a consideration of the whole instrument, it appears that it was the intention of the parties to vest a less estate than a fee in the grantee, that intention will be carried into effect. And when the intention, as manifested in the language, is to convey a life estate with remainder over, there has been no disposition to defeat by construction the purpose of the grantor.' Hark-

ness v. Meade, 148 Ky. 565, 147 S. W. 10; Wilson v. Moore, 146 Ky. 679, 143 S. W. 431; Lawson v. Todd, 129 Ky. 133, 110 S. W. 412, 33 Ky. Law Rep. 557; Atkins v. Baker, 112 Ky. 877, 66 S. W. 1023, 23 Ky. Law Rep. 2224.''

And again, in the case of Dinger v. Lucken et al., 143 Ky. 850, 137 S. W. 776, this court said:

> ''The rule is that where by a deed in fee is granted, and the deed as a whole shows an intention to vest the grantee with a fee, an attempted limitation upon the fee will be disregarded. But in all cases the effect of the deed turns upon its proper construction when read as a whole; and if upon the whole instrument it appears that the grantor's intention was to vest a less estate than a fee in the grantee, that intention will be carried into effect; for deeds like other instruments must be construed according to the intention of the parties where that intention is sufficiently expressed in the instrument.''

May v. Justice, 148 Ky. 696, 147 S. W. 409.

In the Henderson v. Mack Case, supra, there was involved the construction of a deed in which the granting clause recited that the grantors ''do hereby sell, grant and convey to the party of the second part, his heirs and assigns, the following described property: * * * To have and to hold the same, with all the appurtenances thereon, to the second party, his heirs and assigns, forever, with covenant of general warranty during his natural life, and after his death to go to and belong absolutely to Belle Mack, she paying the unpaid purchase money, as aforesaid.'' Here it was held that the technical words importing a fee, used both in the granting and habendum clauses, must yield to the manifest intention as expressed by this addition to the habendum clause.

However, it may be urged that in the instant case, the deed made James Cook by his coheirs of their undivided interest in this land inherited by him from his father should not be construed to have the effect of converting his fee interest in the land so inherited into a life estate, merely by force of the language employed in the habendum clause of the deed, limiting and restricting his estate in his inheritance to that of an estate for

life, with remainder over to his widow and seven children. However, nothing appears in the record tending to show that the deed in question was so made to its named grantee, James Cook, by its grantors through error or mistake nor, in fact, does it appear that it was not thus made by them upon his special instance and request to so make it, and such, we are of the opinion, should be assumed from his acceptance and retention of the deed, so providing, throughout these years he has since held this land thereunder, nothing to the contrary appearing. Such too was the holding and answer to this question when presented upon almost like facts in the very analogous case of Hargis, etc., v. Ditmore, etc., 86 Ky. 653, 7 S. W. 141, 9 Ky. Law Rep. 783. There the question presented was the effect to be given the following deed:

> "This deed of conveyance between I. H. Miller and wife, W. B. Miller and wife, grantors, and Ann Miller, wife of Philip Miller, grantee, witnesseth that whereas, in the division of the lands of Randolph Miller, dec., among his three sons and heirs, I. H., W. B., and Philip Miller, the said I. H. and W. B. have already received each their portion of the land, now, in consideration of said fact, and at the request of said Philip, the grantors hereby deed and convey to Ann Miller the remaining one-third of said land, bounded as follows: * * * containing 63 acres; the said Ann Miller to have and hold the same to herself, her heirs and assigns, forever, with covenant of general warranty."

There, Philip Miller having died, his widow, Ann Miller, sold the tract of land described in the deed to one Hargis, who resisted payment of the purchase price upon the ground she had no title to it, and the three children of Philip Miller, parties to the suit, also claimed it as his heirs at law. The court said:

> "Notwithstanding the other two shares of the original tract had previously been conveyed, respectively, to I. H. and W. B. Miller, the legal title to two-thirds undivided of the 63 acres was still in them, though Philip Miller was entitled to the actual ownership of the whole of it, and might have compelled them to convey the legal title to himself. But instead of doing so, he requested them to con-

vey, not their naked legal title to two-thirds undivided of the land, but to Ann Miller 'the remaining one-third of said land,' and to covenant to warrant the title thereto. They were, therefore, bound to her for a good title to the whole tract of 63 acres, and she could have, at any time, sued them upon that warranty. But Philip Miller having requested them to thus convey with warranty the entire tract, and to that extent, at least, become a party to the deed, could not himself, while living, have recovered any part of the land and, if he could not, neither can his heirs now do so.

"If it was not the intention of Philip Miller to have conveyed to his then wife the entire estate in the land, it is hard to tell what was the purpose of the parties in the execution of the deed.

"Though Philip Miller was not in terms named in the deed as a grantor, nevertheless he is as much bound by the conveyance and covenant of warranty as if he had in the usual form been so named, and to confirm the title of the land to his then wife is but carrying out the purpose of the deed, and enforcing his implied agreement to convey to her."

It must be taken that the parties, both grantors and grantees, in attaching this limitation or restriction to the grant as conditioned by the express, clear, and unambiguous wording of the habendum clause of the deed, meant and intended thereby just what was there said, and under the rule, supra, it becomes the duty of the court to give force and effect to their intent as so expressed. Murphy et al. v. Murphy, 182 Ky. 731, 207 S. W. 491, 492; Ratliffe v. Ratliffe, 182 Ky. 230, 206 S. W. 478; May et al. v. C. & O. Ry. Co., 184 Ky. 493, 212 S. W. 131; Combs v. Fields, 211 Ky. 842, 278 S. W. 137; Wintuska v. Peart et al., 237 Ky. 666, 36 S. W.(2d) 50, 53.

Also it is an equally well-established principle of law that the deed of one having only a life estate, though attempting and purporting to convey the fee, is effective to convey a life estate only, and does not affect the interest of remaindermen. Justice v. May, 176 Ky. 81, 195 S. W. 98; May v. C. & O. Ry. Co., 184 Ky. 493, 212 S. W. 131.

We regard the principle of these cases as conclusive of the case at bar, and controlling of the question here before us, and are, therefore, of the opinion that the instant deed, conveyed, as recited by its habendum clause, only a life estate to the decedent, James Cook, with the remainder to his widow, Kate Cook, and seven children in equal proportions, as therein provided, and by covenant warranted. From this it must follow that the appellee bank secured under its mortgage upon this land, executed to it by James Cook and wife, only a lien upon the life estate of James Cook therein and upon his wife's remainder interest of an undivided one-eighth share in this land. For like reason, it also follows that the lower court erred in overruling appellant's exceptions to the confirmation of the commissioner's report of sale of this land, made pursuant to the direction of the court adjudging enforcement of the appellee bank's mortgage lien against the whole of said property as owned in fee-simple title by the said decedent.

For the reasons stated, the judgment is reversed and the cause remanded to the lower court with directions to set aside its former judgment and to enter judgment consistent with this opinion.